## BLOCKSOM et al. v. GUARANTY STATE BANK & TRUST CO. (No. 1296.)*

(Court of Civil Appeals of Texas. El Paso. March 16, 1922. Rehearing Denied April 6, 1922.)

**1. Set-off and counterclaim ⬦≈≈28(1), 40—Set-off for damages to property seized and sold under foreclosure of mortgage available in foreclosure suit as arising out of same transaction.**

Where plaintiff sued on a note and to foreclose a mortgage securing it, the note and mortgage were parts of the same transaction, and a cross-action claiming damages to the property by reason of its negligent handling by plaintiff in taking possession thereof, and bad faith in selling it for less than its market value under the terms of the mortgage, would be available as arising out of and incident to and connected with the suit on the note.

**2. Set-off and counterclaim ⬦≈≈41—Not available unless mutual and between parties of the suit.**

Defendants gave their note to a bank, the proceeds of which they used to purchase equipment for the use of an oil company in which they were stockholders, taking title in themselves. To secure the note they gave the bank a mortgage covering the equipment, and in a suit on the note and to foreclose, the record not showing defendants owned any interest in the mortgaged property except through the company, which was not a party to the suit. *Held* they could not set off a demand against the bank for alleged injury to or conversion of the property in taking possession and bad faith in selling it below its market value under the terms of the mortgage.

**3. Set-off and counterclaim ⬦≈≈33(1)—Cross-action for conversion of goods not covered by mortgage not available in action to foreclose.**

In an action on a note and to foreclose a chattel mortgage securing it, defendants cannot recover on cross-action for conversion of property not covered by the mortgage.

**4. Chattel mortgages ⬦≈≈278—Finding that bill of sale to mortgagee was intended to abrogate mortgages held not required by the evidence.**

Where company gave a note to a bank, and to secure it gave a mortgage on its equipment, and, subsequently, needing additional funds, the stockholders gave their personal note to the bank, the proceeds of which they used in the purchase of equipment for the company, taking title thereto in themselves and executing to the bank a mortgage covering the equipment so purchased, and later the company gave the bank a bill of sale on the property, evidence *held* not to require a finding that the bill of sale was intended to abrogate and supersede the two chattel mortgages.

**5. Chattel mortgages ⬦≈≈272—Mortgagors, stockholders of corporation, and holding naked legal title, could not complain of seizure under mortgage where corporation, equitable owner, not joined.**

Where defendants gave their note to a bank, the proceeds of which they used to pur-

chase equipment for the use of an oil company in which they were stockholders, taking title in themselves, and to secure the note gave a mortgage to the bank covering the equipment, where it was shown that defendants had no interest in the property, except through the oil company, they could not complain that the bank took possession of and sold the property of the company, the company not being party to the suit.

**6. Payment ⬦≈≈38(1)—Payor has option to designate application of payments.**

Where a bank held a note of a company and also the personal note of its stockholders, and the company had made to the bank a bill of sale of all its property, and made two payments to the bank, without designating application thereof as intended, and the bank credited both payments to the corporation's note, while the intention of the payor was that it be credited on the stockholders' note, and subsequently requested such correction, the mistake should have been corrected by the bank unless between the entries of the credits and the requested correction something intervened that would put the bank at a disadvantage.

**7. Appeal and error ⬦≈≈1151(2)—Error in not crediting payments of certain sums does not require reversal.**

Error in not crediting on a note sued on two payments of certain sums does not require a reversal, but judgment will be reformed.

Appeal from District Court, Eastland County; Geo. L. Davenport, Judge.

Suit by the Guaranty State Bank & Trust Company against W. R. Blocksom, Fred C. Pearce, and Wilkie Carter, wherein defendants Blocksom and Pearce filed a cross-action against plaintiff, and defendant Carter filed a cross-action against defendants Blocksom and Pearce. From a judgment for plaintiff against defendants, and for defendant Carter on his cross-action, defendants Blocksom and Pearce appeal. Reformed and affirmed.

Harrison, Cavin & Key and J. B. Perry, all of Eastland, for appellants.

D. K. Scott, of Cisco, and Scott, Brelsford & Smith, of Eastland, for appellee.

WALTHALL, J. This suit was instituted by the Guaranty State Bank & Trust Company of Cisco, Tex., on May 18, 1920, against W. R. Blocksom, Fred C. Pearce, and Wilkie Carter, to recover on a promissory note executed and delivered by said parties to said bank, in the sum of $9,315, and to foreclose a mortgage on certain property therein described consisting of one galvanized tank and iron casing of different sizes and lengths. By a supplemental petition the bank admitted a credit on said note of $5,694.70, of date June 7, 1920, leaving an unpaid balance of $3,620.31, for which balance, interest, and attorney fees and foreclosure of the mortgage the bank asked judgment.

Defendants Blocksom and Pearce answered

---

* ⬦≈≈For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted May 31, 1922.

by general demurrer, general denial, and special answer as follows:

"(3) These defendants allege that in the month of October, 1919, the Rosedale Oil Company, which was operating in Eastland county, Tex., and maintaining an office in Cisco, Tex., needed more money with which to purchase supplies for its operation, and to pay for labor in drilling oil wells; that the said company had borrowed from and owed the plaintiff in this cause at that time, all of the money which it was permitted by law to borrow; that the defendants W. R. Blocksom, Fred C. Pearce, and Wilkie Carter were financially interested in the said Rosedale Oil Company, each being stockholders and promoters of said company; that in order to assist said company in obtaining further money the said Blocksom, Pearce, and Carter, in October, 1919, executed and delivered to the plaintiff herein their promissory note in the sum of $9,000; that the proceeds of said note were deposited in the bank of plaintiff to the credit of the Rosedale Oil Company; that thereafter, on February 17, 1920, these defendants and the said Wilkie Carter executed and delivered to plaintiff the note herein sued upon, such note being a renewal of the principal and interest then due upon the $9,000 note hereinabove mentioned; that the proceeds of the $9,000 note were used by the said Rosedale Oil Company in the purchase of certain casing and other material for use in the drilling of an oil well upon certain land known as the Goodman lease; that about the time said $9,000 note was executed the Rosedale Oil Company purchased from the Blinn Oil Company certain casing and other material, for which the sum of $19,000 was paid to the Blinn Oil Company, the proceeds of the said $9,000 note being used by said Rosedale Oil Company in the purchase of said material; the bill of sale from the said Blinn Oil Company conveying said property so purchased from them was made and executed to the defendants, W. R. Blocksom, Fred C. Pearce, and Wilkie Carter, with the intent and idea of placing the legal title in the said parties to secure them in the payment of the $9,000 note above mentioned; that prior to April 19, 1920, the Rosedale Oil Company had purchased and assembled upon said Goodman lease a considerable quantity of material for use in drilling of an oil well, including the material purchased from the Blinn Oil Company as hereinafter set forth; there is attached to this answer a copy and correct inventory and list of such property, with the value of each item set forth in said inventory, and the same is attached hereto, marked Exhibit A, and made a part hereof; that the property so assembled by said Rosedale Oil Company upon said Goodman lease on the 19th day of April, 1920, as well as the 13th day of May, 1920, was of the reasonable market value of $50,000; that on the 19th day of April, 1920, the Rosedale Oil Company executed and delivered to the plaintiff herein a bill of sale conveying all of its property on the Goodman lease, including the property bought from the Blinn Oil Company, as hereinabove specified; that it was at said time agreed between these defendants and the Rosedale Oil Company on the one hand and the plaintiff on the other that said conveyance was made merely for the purpose of further securing the plaintiff in the payment of the money then owing to it by said Rosedale Oil Company, and by W. R. Blocksom and Fred C. Pearce; that there was no actual manual delivery of said property to the plaintiff, but the same was allowed to remain in the possession of the Rosedale Oil Company, and on this account defendants allege and charge that said bill of sale amounted to nothing more than a hypothecation or mortgage of said property, and that the title did not thereby pass as between these defendants and the Rosedale Oil Company and plaintiff, but said property was so conveyed merely for the purpose of creating a lien to secure the payment of the debt as hereinabove alleged. That on the 19th day of April, 1920, as well as prior to said date, the plaintiff held two mortgages, one executed and delivered by the defendants, W. R. Blocksom, Fred C. Pearce, and Wilkie Carter, to secure the note herein sued upon, and the other executed by the Rosedale Oil Company for the purpose of securing the plaintiff herein in the payment of a note in the sum of $12,500 executed by said Rosedale Oil Company to the plaintiff; that such chattel mortgage covered a part only of the property described in Exhibit A attached hereto, and did not cover or include all of the property embraced in the above bill of sale; that such bill of sale was executed and delivered by the said Rosedale Oil Company with the consent and knowledge of these defendants, and with the understanding and agreement between the Rosedale Oil Company and W. R. Blocksom and Fred C. Pearce on the one hand and the plaintiff herein on the other that the said bill of sale should abrogate and supersede the said two chattel mortgages hereinabove mentioned; that such agreement, and the execution and delivery of said bill of sale as aforesaid, has completely abrogated and superseded the two chattel mortgages; the same are now of no further force or effect.

"These defendants further allege that on or about the 12th day of May, 1920, without the knowledge or consent of these defendants, and without their sanction or authority, the plaintiff took possession of all of the property described in the inventory attached to this answer and converted the same to its own use; that the acts of the plaintiff in taking possession of said property and converting the same to its own use were unlawful and unauthorized, and were done without the sanction or consent of the defendants herein, and in law amounted to a conversion of such property, and that at the time said property was taken possession of and converted as aforesaid by plaintiff the same was of the reasonable value of $50,000; that, at the time said property was taken possession of and converted by the plaintiff as hereinabove set forth, the defendants Blocksom and Pearce and the Rosedale Oil Company did not owe the plaintiff bank any money in excess of the sum of $21,815, together with interest thereon from February 17, 1920, at the rate of 10 per cent. per annum, including in said amount the note herein sued upon by plaintiff; that the property so converted by plaintiff as hereinabove alleged has more than paid off and satisfied the note herein sued upon, as well as the indebtedness owing by the Rosedale Oil Company to plaintiff, and these

defendants therefore are entitled from plaintiff to all of the costs in this behalf expended.

"(4) Without waiving the foregoing answer and pleas these defendants allege that if it should be held and established in this case that the plaintiff herein had the right to take possession of and lawfully seize the property mentioned in paragraph No. 4 hereof (evidently meaning paragraph No. 3), and if it further be held that plaintiff had the right to sell the same, then that a part of said property was sold by the plaintiff, and plaintiff has credited the note herein sued upon with the sum of $5,694.70, to which credit said note would be entitled.

"(5) Defendants claim credits of $190 and $400 paid into the bank which we discuss under assignments to which they refer.

"(6) If it be held and established in this case that the plaintiff herein had the right to take possession of the property described in paragraph 4 hereof (evidently meaning paragraph No. 3), and was lawfully in possession thereof, then these defendants allege that they are entitled to a credit on said note by reason of the destruction and damage of a certain portion of said property in the following manner: That shortly after the agents and representatives of the plaintiff took possession of said property as aforesaid they negligently endeavored to pull a part of the casing out of the well on the said Goodman lease; that in endeavoring to pull said casing said agents and representatives negligently and carelessly pulled said casing in two, and left about 1,800 feet of the same in the well in such condition that the same cannot be rescued or salvaged; that the acts of the agents and representatives of the plaintiff in pulling said casing in two were carelessness and negligence on the part of the plaintiff's said agents, in that they put too much steam upon the said casing and caused the same to be jerked violently, such pressure and jerking causing said casing to be broken in two and rendered worthless—that the casing so damaged and destroyed by the carelessness and negligence of plaintiff as aforesaid was of the reasonable value, at the time of the damage to the same, of the sum of $10,000; that, if the agents and representatives of plaintiff had exercised the proper care in attempting to remove the casing from said well, then the same would not have been damaged or destroyed, and these defendants would have thereby been benefited by the value of such casing, which is alleged to be the sum of $10,000; and these defendants herein and now allege that, in justice and in equity, as well as in law, they and the Rosedale Oil Company are entitled to a credit amounting to the value of the casing so damaged and destroyed by plaintiff on the debts owing by these defendants and the Rosedale Oil Company to the plaintiff.

"(7) Further answering herein, if it should be held that plaintiff has the right to seize and sell the property described in the bill of sale aforesaid, defendants allege and charge that the plaintiff did not act in good faith in selling said property, but, to the contrary, sold part of said property for much less than the same could have been sold for by use of reasonable care and diligence; that plaintiff conspired and colluded with defendant Carter, and made a sale of part of said property to said Carter for $5,000 less than the actual value of the same; that plaintiff has failed to sell a part of said property, and has permitted same to go to waste, and has lost part of same, the exact amount of which defendants are unable to aver; that defendants are entitled to a credit on said note for the difference in the price paid by Carter, and the reasonable value of the property purchased by him, as well as the value of the property which plaintiff has permitted to go to waste and loss, the exact amount of which they are unable to allege."

Defendant Carter answered by general demurrer, general denial, by cross-action against Blocksom and Pearce for such amount as he might be required to pay the bank on the debt sued on.

The bank answered by special exception to the cross-action of Blocksom and Pearce as pleaded in paragraphs 6 and 7 of their answer, on the ground that the bank's cause of action was founded on a certain demand, and that the cross-action was founded on an unliquidated and uncertain demand for damages, and that same did not arise out of, and was not incident to, or connected with, the bank's cause of action. The bank further answered that it had the right, under the terms of both the mortgages, to take possession of the property upon failure to pay the notes, etc., and to sell the same, and, further stipulated that taking additional security would not impair the mortgage.

The case was tried without a jury, and judgment rendered in favor of the bank against Blocksom, Pearce, and Carter for $4,399.60, and in favor of Carter on his cross-action against Blocksom and Pearce for such amount as he might be compelled to pay the bank on the judgment, and against Blocksom and Pearce on their cross-action against the bank. Blocksom and Pearce prosecute this appeal.

The trial court made findings of fact and conclusions of law. While the findings are quite lengthy, and some of them are admitted in the pleadings, and are undisputed, we have concluded to copy them in full as they state a history of the several transactions between the parties.

### "Findings of Fact.

"The Court finds:

"(1) That heretofore, on November 11, 1919, the Rosedale Oil Company, a common-law trust was indebted to the Guaranty State Bank & Trust Company of Cisco, Tex., plaintiff in this cause, in the principal sum of $12,500, which indebtedness was evidenced by one promissory note for that amount, executed by said Company, acting by W. R. Blocksom, First Vice President, and W. N. Baker, Secretary-Treasurer, and to secure said indebtedness, the said company, through its said officers, executed a chattel mortgage on certain oil well machinery and equipment; that at the time of the execution of the said note and mortgage,

the defendants, Fred C. Pearce and Wilkie Carter were each stockholders in and active managers of the said Rosedale Oil Company, and each knew of the existence of the said indebtedness and the nature of its security.

"(2) That thereafter, on or about the 24th day of November, 1919, the Rosedale Oil Company was in need of additional funds and moneys for the operations of the business of the company, and through its officers applied to the plaintiff bank for a further loan of $9,000, but, on account of banking regulations, the officers of the said bank were unwilling to loan to the Rosedale Oil Company the amount applied for; that, the said Rosedale Oil Company failing to secure the needed loan, its officers, Blocksom, Pearce, and Carter, who are the defendants herein, executed their personal note to the said bank, plaintiff herein, for the $9,000, with the agreement between themselves and the officers of the Rosedale Oil Company that the funds so secured would be furnished to the Rosedale Oil Company to enable said company to purchase needed supplies in carrying on its business of drilling for oil, and agreed further that the property, oil well supplies, etc., purchased with the said funds would be taken in the name of the signers of the said note—Blocksom, Pearce and Carter, defendants herein—and that, in accordance with the said agreement, the defendants purchased from the Blinn Oil Company certain oil well machinery, casing, and supplies, and received from the said Blinn Oil Company a bill of sale to the property so purchased, said bill of sale being made out to the defendants Blocksom, Pearce, and Carter, that the said defendants, after the said bill of sale was so delivered to them, executed a certain chattel mortgage (being the same mortgage introduced in evidence in this case) covering the property so purchased from the Blinn Oil Company, to secure the indebtedness evidenced by the said $9,000 note held by the plaintiff in this case; that the proceeds of said $9,000 note were deposited to the credit of the Rosedale Oil Company.

"(3) That the note sued upon herein is a renewal of the original note above referred to, and is secured by the property described in the mortgage introduced in evidence in this case.

"(4) That immediately thereafter the Rosedale Oil Company, through its officers and managers, took possession of the oil well machinery, casing, etc., covered by the bill of sale and chattel mortgage, and for some time had the use of the said property; that, since the title to said property covered by the bill of sale was vested in the defendants, they have made no transfer or assignment of the same to the Rosedale Oil Company, or any other person or persons.

"(5) That, while the Rosedale Oil Company and the defendants herein had in their possession the property covered by the mortgage to secure the note sued on herein, the Rosedale Oil Company, through its authorized agent, W. N. Baker, made a sale of a portion of the pipe or casing covered by the mortgage securing the note sued on herein, receiving therefor the sum of $400; that, immediately thereafter, the said Baker deposited to the credit of the Rosedale Oil Company in plaintiff bank said amount, and executed said company check in favor of

the bank, plaintiff herein, for the sum of $400, and delivered the same to said bank without any instruction as to its application, which amount was at the time the same was delivered to the bank placed to the credit of the said Rosedale Oil Company on the $12,500 note owing by the Rosedale Oil Company to said bank; that at another time the Rosedale Oil Company, through its secretary-treasurer, W. M. Baker, sold other pipe or casing, receiving therefor the sum of $190 net, which sum was by the said Baker deposited in the plaintiff bank to the credit of the Rosedale Oil Company, and immediately thereafter the said Baker executed the said company's check for the sum of $190, and delivered the same to the bank without any instructions as to its application; that the bank, immediately upon the receipt of the said amount, applied the same as a credit on the $12,500 note owing by the Rosedale Oil Company to the bank; that, several days after the $190 check was given, the said W. N. Baker, secretary-treasurer of the Rosedale Oil Company, notified the plaintiff bank that the $190 payment was the proceeds from the sale of property covered by the mortgage to secure the $9,000 indebtedness, and suggested that it should be credited on the $9,000 note, but no change was made by the bank as to this credit, and the same remained as a credit on the $12,500 note; that said Baker in making these payments to the bank was acting for the defendants herein, as well as the Rosedale Oil Company.

"(6) That on or about the 19th day of April, 1920, the Rosedale Oil Company, by and through its authorized officers, executed a bill of sale covering all of the property of the Rosedale Oil Company situated on the Goodman lease to the plaintiff bank; that the property covered by the bill of sale executed to the defendants by the Blinn Oil Company, and also by the mortgage executed by the defendants to the plaintiff bank, was, after the execution of the said instruments, moved to what was known as the Goodman lease; that the bill of sale from the Rosedale Oil Company, above referred to, included most, if not all, of the property covered by the bill of sale and chattel mortgage above mentioned, and was signed by the said Rosedale Oil Company, of which company W. R. Blocksom and Fred C. Pearce, both defendants herein, were directors.

"(7) That about June 1, 1920, for a consideration of $11,000, the plaintiff bank sold to the defendant Wilkie Carter all the oil well machinery, supplies, casing, etc., located on what is known as the Goodman lease, which property was covered by the mortgage given by the Rosedale Oil Company, as well as the mortgage given by the defendants, Blocksom, Pearce, and Carter, to this bank, the said defendant Carter assuming the risk of salvaging the casing from the well; that of the $11,000 received the sum of $5,694.70 was credited on the $9,000 indebtedness sued on herein, and the balance of said amount was credited on the $12,500 note owing by the Rosedale Oil Company; that the amounts so applied on said notes represented the proceeds of the sale of the property covered by the respective mortgages, and was secured from information and figures furnished by the defendant Wilkie Carter.

"(8) That it was agreed and understood by and between defendants herein, and the Rosedale Oil Company, through its trustees, directors, and authorized agents, that the Rosedale Oil Company would assume, pay off, and satisfy the indebtedness sued on herein, and would take title to the property described in the mortgage executed by the defendants herein to the plaintiff bank, and the said indebtedness was by the said defendants and the said Rosedale Oil Company recognized as the debt of the said Rosedale Oil Company and all of the said property described in the mortgage and bill of sale referred to was used and appropriated by the Rosedale Oil Company under said agreement.

"(9) That before the institution of this suit the defendant Wilkie Carter sold all his interest in the Rosedale Oil Company to the defendants Blocksom and Pearce, and as a part of the consideration the last-named defendants agreed in writing to assume and pay off the indebtedness sued upon herein by the plaintiff.

"(10) The court finds from the evidence and admissions of attorneys representing all parties to the suit that the $12,500 note executed by Rosedale Oil Company to the plaintiff bank had, before the trial of this case, been adjudged and paid off, and that the two payments testified about were shown as credits on said note."

Under the first assignment of error, complaining of the action of the court in sustaining the bank's special exception to their cross-action as contained in paragraphs 6 and 7 of their answer, stated above, appellants present three propositions. The first two, making a concrete application of them to the facts as pleaded, are to the effect that, if the bank, the mortgagee, in endeavoring to take possession of the casing in the well, under the terms of the mortgage, negligently and carelessly injures or destroys the casing, or if the bank, acting under the terms of the mortgage, seizes the property covered by the mortgage for the purpose of selling it, but fails to act in good faith in selling it, and sells the property for a sum considerably less than its reasonable market value, or permits waste, in either event the mortgagor is entitled to have the reasonable value of such property credited on the mortgage debt. The third proposition under this assignment is that the appellants claim for unliquidated damages resulting from the matters complained of as stated in the two foregoing propositions may be pleaded where such damages arise out of or are incident to or connected with the bank's demand.

By appellant's answer, and the bank's supplemental pleading, the note given by the Rosedale Oil Company and the mortgage given to secure it, and the bill of sale to the property given by the Rosedale Oil Company to the bank, are all brought into the case.

[1] As an abstract proposition of law we think that the note and the mortgage given by appellants to the bank were parts of one and the same transaction; that any cause of action founded on the foreclosure of the mortgage would be a cause of action arising out of and incident to and connected with the suit on the note, as would also the taking possession of the mortgaged chattels under the terms of the mortgage, and by the terms of the mortgage making sales of the property. Nesbitt v. Hudson (Tex. Civ. App.) 230 S. W. 746; McDonald v. Lastinger (Tex. Civ. App.) 214 S. W. 829; Steeper v. Thompson (Tex. Civ. App.) 23 S. W. 326; Ajax-Grieb Rubber Co. v. Byars & Thompson (Tex. Civ. App.) 153 S. W. 921; Gillispie v. Ambrose (Tex. Civ. App.) 161 S. W. 937. See, also, Annotations, L. R. A. 1916C, 497.

[2] The propositions of appellants, we think, present sound propositions of law, and, if the bank took possession of the mortgaged property under the terms of the mortgage, and did the wrongful acts complained of, and by reason thereof appellants sustained damages, appellants ought to be permitted to show such acts and the resultant damages. We think, however, the record does not show that appellants own or have an interest in the property other than through the Rosedale Oil Company. While they took the bill of sale to the property directly to themselves from the Blinn Oil Company, the transaction was had to assist the Rosedale Oil Company to buy the property; the money received on the note was turned over to the Rosedale Oil Company to supplement the amount paid by that company for the property, and the property when purchased was given over by appellants to that company to use in putting down the well. Appellants were not acting in putting down the well except through the Rosedale Oil Company. The Rosedale Oil Company was not a party to the suit. The general rule seems to be that demands cannot be set off unless they are mutual and between parties to the action. Casey v. Hanrick, 69 Tex. 44, 6 S. W. 405.

The court found that, by agreement between the Rosedale Oil Company and appellants, that company would take title to the property embraced in the mortgage executed by appellants to the bank, and would assume and pay off the indebtedness sued on. That finding is not challenged.

The second assignment complains of the refusal of the court to permit proof of the reasonable market value of the property itemized in Exhibit A, a part of the appellants' answer, and alleged to have been taken and converted by the bank. The issue is similar to the one discussed under the first assignment.

[3] If we are not in error in the conclusion expressed in considering the propositions under the first assignment, we think it was not reversible error to refuse to hear evidence to show a conversion of the property under the cross-action. Also some of the property listed in Exhibit A was not covered by the mort-

gage, and we think a conversion of such property could not be shown, and the record does not disclose what property included in the inventory the value of which appellants sought to show.

[4] As we view the record, it was not reversible error in the court's failing to find that it was the intention of all of the parties that the bill of sale executed by the Rosedale Oil Company to the bank should abrogate and supersede the two chattel mortgages, as a mortgage and as additional security. The evidence is not undisputed, as claimed by appellants in the propositions under the third and fourth assignments. The evidence seems clear that the bank had refused to extend the time of payment of the two notes then due, and advised appellants that some of the property be sold, and, if not, the bank was going to foreclose on the two mortgages; the bank advised that a bill of sale be given to the bank to all of the property covered by the two mortgages, and sent the witness Calloway, one of the officers of the bank, to inspect the property. Calloway gives a different version of what took place in the conversations preliminary to the giving of the bill of sale. He said there was a series of conversations about the bill of sale; that he told them (Blocksom and Pearce) that the bank wanted a bill of sale covering the entire property—

"with the understanding that we were both to work together and sell all of the stuff on there (the Goodman lease) or a part of it at a time; anyway it could be sold to realize the most money out of it. I told them the bank would work with them to sell this stuff to the best advantage, and they said they would work together with the bank to sell it. * * * There was nothing said in my conversation with these men about the bill of sale being additional security. The object of the bill of sale was to enable the bank to sell the stuff at any time we saw fit, and enable the bank itself to give a clear title to the property."

[5] The appellants, we think, cannot complain in this suit that the bank took possession of and sold the property of the Rosedale Oil Company, as contended by appellants in their propositions under the fifth and sixth assignments. That company was not a party in the suit.

[6] On the 19th day of April, 1920, the Rosedale Oil Company made a bill of sale to the bank to all of its properties on the Goodman lease. On May 10, 1920, and at another time, date not stated, Baker, representing the Rosedale Oil Company, sold some of the casing on the Goodman lease, one item for $190 and one item for $400, and deposited each amount in the appellee bank to the credit of the Rosedale Oil Company, and gave checks to the bank on that deposit for the two amounts, not stating at the time of giving the checks on which of the two notes the credits should be placed. The bank placed the credits on the note of the Rosedale Oil Company.

Appellants insisted on the trial, and now here, that the two credits given to the Rosedale Oil Company was intended as credits on their note, and that they should now have such placed to their credit on the note sued on. We have concluded that appellants should have been given the two credits. The Rosedale Oil Company and appellants were separate and distinct debtors to the bank. The notes given by each sustained a separate and distinct relation as to themselves, and as to the bank. Appellants primarily owed the bank on their note, while their liability on the Rosedale Oil Company's note, if they were liable at all, which does not appear, was not a primary liability, but purely collateral or secondary. The undisputed evidence and the fifth finding of the trial court shows a mistake on the part of Baker in not directing the bank to credit the two items on appellant's note. Shortly after the credits were placed on the Rosedale Oil Company note Baker called the attention of the bank to the mistake, and requested a correction, but a correction was not made. Baker seems to have been representing the Rosedale Oil Company and appellants in making sales of the property on the Goodman lease. We do not controvert the proposition found in the trial court's conclusion of law that "the bank had the legal right to credit the amounts of said payments on the $12,500 note." But we think a mistake should be corrected by the bank when its attention is called to it shortly thereafter, unless it be shown that between the entries of the credits and the requested correction something has intervened that would put the bank to a disadvantage, which does not appear.

[7] We think, however, the error in not crediting the note sued on with the two items of $190 and $400, do not necessarily require a reversal of the case. Here the facts are found by the court, and the facts are supported by the evidence. The error, as we view it, is found only in the court's conclusion of law, and carried into the court's judgment.

With the above correction and corresponding reduction of the judgment, we think the tenth finding of the court, as complained of under the seventh and eighth assignments, if error, is immaterial. The judgment of the trial court is here reformed as to the balance due on the note sued on by having entered as credits thereon the two items of $190 and $400, and as to all other matters the case is affirmed.

Reformed, and as reformed affirmed.