# FARMERS STATE BANK OF CATHAY, NORTH DAKOTA, Respondent, v. EMANUEL JESKE, Karoline Jeske and Lemert Grain Company, Appellants.

(197 N. W. 854.)

**Evidence — testimony on personal knowledge and not derived from unsworn statement of others not hearsay.**

1. Where testimony of a witness is based on personal knowledge of facts and where such knowledge is not derived from the unsworn statements of others, such testimony is not hearsay.

**Dismissal and nonsuit — dismissal of action against some of defendants for failure of proof not dismissal against others.**

2. Where plaintiff, in a conversion action, at the conclusion of the trial, dismisses his action against some of several defendants for failure of proof, others joined as defendants are not released because of such dismissal, within the rule that the discharge of one joint tort-feasor for a consideration releases all.

**Torts — joint tort-feasors jointly and severally liable.**

3. Joint tort-feasors are jointly and severally liable; the plaintiff may sue them individually or jointly, at his election.

**Bills and notes — new note not payment of old note, where both evidence of same debt.**

4. A new note is not payment of an old note, where both notes are evidence of the same debt and where the original note is retained by the payee or holder as security for the new; a chattel mortgage taken to secure the payment of a debt evidenced by the original note remains as security for the payment of that debt.

**Pleading — amendment of complaint to show date of conversion held not erroneous.**

5. Where evidence as to the date of the conversion has been admitted without objection, it is held, for reasons stated in the opinion, that the trial court

Note.—(2) Effect of release of one joint tort feasor on liability of the other, see note in 58 L. R. A. 304; 9 R. C. L. 201; 2 R. C. L. Supp. 767.

(3) Joint and several liabilities of joint tort feasors, see 26 R. C. L. 763; 3 R. C. L. Supp. 1481; 4 R. C. L. Supp. 1678; 5 R. C. L. Supp. 1425.

(9, 10) Newly discovered evidence as grounds for new trial, 20 R. C. L. pp. 290, 294; 3 R. C. L. Supp. 1051; 4 R. C. L. Supp. 1351; 5 R. C. L. Supp. 1096.

(11) Privilege of witness as to incriminating testimony, see 28 R. C. L. 426; 4 R. C. L. Supp. 1824; 5 R. C. L. Supp. 1537.

properly permitted the plaintiff to amend the complaint by inserting an allegation as to the date when the conversion took place, such specific allegation having been omitted from the original complaint.

**Trover and conversion — identity of grain sufficiently identified.**

6. For reasons stated in the opinion, it is *held* that the grain alleged to have been converted was sufficiently identified.

**Trover and conversion — evidence held to sustain finding of market price of grain alleged converted.**

7. For reasons stated in the opinion, it is *held*, that the verdict of the jury as to market value of the grain is supported by sufficient competent evidence.

**Trover and conversion — evidence held to sustain finding of demand.**

8. Under the facts and for reasons stated in the opinion, it is *held*, that the finding of the jury on the issue of demand is sufficiently supported by competent evidence.

**Appeal and error — new trial — new trial for newly discovered evidence discretionary; ruling on motion for new trial for newly discovered evidence not disturbed, unless discretion abused.**

9. A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court and its ruling thereon will not be disturbed on appeal, unless such discretion has been manifestly abused.

**New trial — denial of new trial not erroneous where newly discovered evidence not likely to result in different verdict.**

10. Where the newly discovered evidence is not likely to result in a different verdict, it is not an abuse of discretion to deny a motion for a new trial on that ground.

**Witnesses — privilege to refuse to testify on ground of self-incrimination must be claimed by witness under oath; party against whom witness called to testify cannot claim privilege; not duty of trial court to inform witness of privilege.**

11. The privilege of a witness to refuse to testify on the ground that his testimony may incriminate himself is personal and must be claimed by the witness himself, and under the sanctity of an oath. The party against whom a witness is called to testify has no such interest in the matter that he may object if a witness voluntarily gives self incriminating evidence. It is not the duty of the trial court, upon the interposition of such a party, to inform the witness of his privilege.

**Bills and notes — refusal to exclude renewal note held not erroneous.**

12. For reasons stated in the opinion, it is *held*, that the trial court did not err in refusing to exclude a promissory note upon the ground that it was not marked "renewed," altho renewal notes had been taken, as required by chapter 91 of the Session Laws of 1921.

Opinion filed February 16, 1924. Rehearing denied March 20, 1924.

Appeal and Error, 4 C. J. § 2817 p. 835 n. 67. Bills and Notes, 8 C. J. § 630 p. 429 n. 44; § 793 p. 571 n. 58. Dismissal and Nonsuit, 18 C. J. § 37 p. 1162 n. 78. Evidence, 22 C. J. § 167 p. 199 n. 36. New Trial, 29 Cyc. pp. 901 n. 59; 1032 n. 2. Pleading, 31 Cyc. p. 444 n. 29. Torts, 38 Cyc. p. 488 n. 14. Trover and Conversion, 38 Cyc. pp. 2084 n. 19; 2087 n. 26; 2088 n. 32. Witnesses, 40 Cyc. pp. 2547 n. 86; 2548 n. 92, 94.

Appeal from the District Court of Wells County, North Dakota, *Coffey*, J.

Affirmed.

*F. B. Lambert*, for appellant.

*Adam Zuber*, and *John O. Hanchett*, for respondent.

JOHNSON, J. This is an action for the alleged conversion of a quantity of wheat. The plaintiff, holder of a chattel mortgage upon the grain, brought suit in the district court of Wells county against the defendant grain company and the mortgagors, owners of the premises on which the grain was grown. The case was tried to a jury and resulted in a verdict for the plaintiff. A motion in the alternative was thereafter made for a new trial or for judgment notwithstanding the verdict. The defendant grain company appeals from the judgment entered upon the verdict and from the order of the trial court denying the motion.

The original complaint was in the ordinary form, but contained no allegation as to when the conversion took place. The defendant Grain Company answered, setting up four separate defenses. The first defense is a general and specific denial of all the allegations of the complaint, except that of the corporate character of the defendant; the second, in substance, alleges that the chattel mortgage was procured by fraud; the third defense alleges that the plaintiff knowingly and without protest permitted the defendant grain company to advance money to the mortgagors upon the understanding that the grain in issue would be sold and delivered at the defendant's elevator at Lemert; the fourth defense alleges a waiver of its claim by the plaintiff in this, that it took new notes and new security for the note described in the complaint and, thereby and by extensions of time of the payment thereof, waived the lien of the mortgage.

At the trial, the plaintiff, having failed to prove conversion against the Jeskes, dismissed the case as to them; it filed a new amended complaint by leave of court, but over objection of counsel for the defendant grain company. No evidence was introduced or offered at the trial tending to establish the second defense. Some evidence was offered in support of the third defense, but that was squarely denied by the cashier of the plaintiff. On this point the verdict is conclusive. The same is to some extent true of the fourth defense; although evidence was offered thereunder, nevertheless the testimony of the cashier of the plaintiff tends to negative the construction put upon the transactions described in the fourth defense by the defendant grain company. This will be referred to later in this opinion.

The defendant grain company, appellant in this action, alleges numerous errors. It is asserted that the trial court erred in rulings upon evidence; that the dismissal as against the mortgagors amounts to a discharge of one joint tort-feasor for a consideration and therefore is a discharge of the plaintiff's cause of action against the defendant grain company; that the court should have sustained defendant's contention to the effect that, when the plaintiff renewed the note secured by the mortgage and took additional security and received payments thereon subsequent to the time of the alleged sale of the grain to the defendant by the mortgagors, the plaintiff thereby elected to rely on a contract and waived its right to sue in tort and is now estopped from maintaining an action in conversion; that the court erred in permitting the plaintiff to amend its complaint so as to allege conversion on June 29, 1921, the first complaint not having alleged the date when the demand was made or the conversion took place; that the plaintiff failed to establish by a preponderance of the evidence that the grain raised on the premises described in the mortgage was delivered at the defendant's elevator; that is, it is claimed that the plaintiff failed to identify the grain; that there was no competent proof to establish the market price of grain on June 29, 1921, at Lemert, and that no proper demand was shown; that the court erred in denying the motion for a new trial on the ground of newly discovered evidence; that it was error to refuse to instruct the witness Jeske, one of the mortgagors, as to his privilege to refuse to testify upon the ground that his testimony might be in-

criminating; and that by its conduct, the plaintiff has waived its right to the grain alleged to have been converted.

The defendant contends that the court improperly permitted the witness Jeske, over objection, to testify that he saw the children who hauled the grain from his farm to an elevator at Lemert go "east to Lemert;" that it was error to permit this witness to testify that he instructed the children to haul the grain to the defendant's elevator, and that certain exhibits, being the weight checks issued by the elevator at which the grain was delivered, were delivered to the witness by the children when they returned from town; and that it was error to admit the weight tickets in evidence. It is contended that the rulings above set forth violated the rule against hearsay. We cannot agree with defendant's contention. There was no direct testimony produced at the trial for the purpose of identifying the grain and proving that it was delivered at the defendant's elevator at Lemert. It was competent, however, for the plaintiff to prove this ultimate fact by circumstantial evidence; it was properly established that a quantity of durum wheat was raised upon the premises described in the mortgage; that this was threshed by the defendant himself; it was proper for the witness to testify as to what he did with reference to the disposition of this grain. It was proper for him to state what instructions he gave to the persons who hauled the grain away from the farm; so far, he is testifying to nothing which is based upon the statements or the knowledge of other persons. Similarly, and for the same reason, it was proper to permit him to testify that the exhibits offered in evidence were delivered to him by the children upon their return. That the weight checks were in fact issued by the appellant appears not to be disputed. Whether these exhibits tended to establish the ultimate fact of the identity of the grain and the delivery thereof at the defendant's elevator are questions that must be answered upon other considerations. The testimony of the witness as to from whom he received the tickets and the circumstances under which he received them, did not violate the rule against hearsay evidence. These were all facts and circumstances to be considered in connection with other facts with reference to the question of the identity and delivery of the grain. In none of the testimony alleged to be hearsay does the witness state any facts not within his own knowledge or based upon the knowledge or statements of other

persons than himself. Clearly, if his knowledge of the facts to which he testified were derived from the unsworn statements of others, his testimony should have been excluded under the hearsay doctrine. 22 C. J. 214. This, however, is not the case. We conclude that the objections based upon the claim that this class of testimony was hearsay is not well taken.

It is contended that the defendants were joint wrong doers and that some of the joint wrong doers, the Jeskes, having been released, the others were also released. This contention is not well founded for more reasons than one. In the first place, it assumes, which is by no means certain under the evidence in this case, that the mortgagor and the elevator which bought the grain from him were joint wrong doers. Whether they were, it is not necessary to decide. Assuming, however, that the defendants were joint wrong doers, the evidence does not show that any one of them was released from liability. The most it does show is that the action against some of the defendants, the Jeskes, was dismissed for failure of proof at the trial. This is not a release within the rule. Chicago v. Babcock, 143 Ill. 358, 32 N. E. 271. There is another and complete answer to this contention and that is the plaintiff may sue one or all of the joint wrong doers; they are jointly and severally liable; 38 Cyc. 2056; if he elects to sue or prosecute the suit against only one of them, that one cannot complain. This is an elementary principle in the law of torts. Cooley, Torts, 3d ed. p. 224. There is nothing in the record that shows a release of a joint tort-feasor.

It is next contended that the plaintiff waived its claim under the mortgage by renewing the note secured thereby and by taking additional security; it is also asserted that the original note described in the mortgage was paid by reason of this arrangement. On the question of payment, the cashier of the plaintiff expressly denies that the note has been paid. The evidence shows that the original note was renewed at least twice and that additional security was taken, but the old note was at all times retained in the possession of the plaintiff. The evidence discloses no intention to release the security or to accept the renewal note in payment of the original indebtedness. The rule seems to be that a new note is not payment of an old note, where both notes are evidence of the same debt and where the original mortgage taken to secure the payment of a debt evidenced by the old or original note

remains as security for the payment of that debt. Wirtz v. Wolter, 32 N. D. 364, 155 N. W. 1092; Silver Lake State Bank v. George, 105 Kan. 129, 181 Pac. 574; Blocksom v. Guaranty State Bank & T. Co. — Tex. Civ. App. —, 241 S. W. 315; 11 C. J. 682, 683; Jones, Cha'. Mortg. §§ 643, 644. The cashier of the plaintiff expressly denies any such payment, discharge or release. The verdict of the jury is conclusive on this point.

It is claimed that the court erred in permitting the plaintiff to amend its complaint by inserting therein an allegation as to the date of the conversion. As pointed out, the complaint originally did not allege the date on which the conversion took place. No attempt was made by appellant to require plaintiff to make its complaint more definite and certain in this respect; nor did it demur on this ground. The date was supplied in the amended complaint. Evidence of a demand and refusal as of June 29, 1921, had been admitted without objection; the amendment merely conformed to the proof. Manifestly, it was not an abuse of discretion to permit the amendment. Thereafter the complaint, as amended, was rewritten and served on appellant on March 3, 1923, thirty-three days after the amendment was allowed and after the end of the trial. It is said that the plaintiff must be held to have abandoned the amendment. The contention is wholly devoid of merit. The amendment was properly allowed at the trial and proof was received thereunder. No prejudice is alleged and none appears as a result of this delay in redrawing the complaint.

The most serious question raised by the defendant and appellant grain company is with reference to the identification of the grain. It is asserted that the plaintiff failed to sustain the burden of proof in this, that there was no competent evidence sufficient to support a finding by the jury that the wheat raised upon the premises described in the chattel mortgage was in fact sold and delivered at the elevator of the defendant at Lemert, North Dakota. The testimony on this point may be briefly summarized as follows: Plaintiff called the mortgagor, Emanuel Jeske, who testified that durum was grown upon the premises described in the chattel mortgage during the season of 1920; that the grain was threshed by himself sometime in September and October that year; that he instructed his children to haul this wheat to the elevator of the defendant at Lemert, North Dakota; that he saw the

children leave his premises with the loads of grain and go east in the direction of Lemert; that when they returned, they delivered to him weight checks, identified in this case as Exhibits 3 to 24, evidencing the amount, kind and quality of grain delivered at the elevator; he further stated that, although there was nothing on the face of the weight checks that indicated where the grain described therein was grown, he nevertheless could identify the grain described in the weight checks as that grown upon the premises described in the mortgage, by reason of the fact that the grain covered by the chattel mortgage was durum No. 1, while other durum grown by himself during the same season, upon other lands, some of which was hauled to this same elevator, was durum No. 2. Most of the weight checks show upon their face that they are issued by the defendant grain company and in fact on this point there does not seem to be any dispute. Upon the whole record, we are satisfied that there is sufficient identification of the grain to support the verdict of the jury. The testimony of the witness Jeske is quite specific that he knew that the grain described in the weight checks was the identical grain covered by the chattel mortgage. Numerous cases from this jurisdiction and from other courts are cited by the appellant in support of his contention that the evidence of identity is insufficient. We have examined these cases and they are not in point, the facts being materially different in all of them.

It is next contended that the plaintiff failed to prove the market value of the grain at the time and place of the conversion. Plaintiff called one Lyness, who testified that he had for many years been in the grain business at Fessenden, a few miles from Lemert. From his testimony, it appears that he was in charge of the grain business of a company which had houses at different points in the state. It was, he said, a part of his duty to keep advised of the prices of grain at places in the neighborhood of Fessenden; he testified that he received daily cards prepared by the Grain Bulletin of Minneapolis, showing the daily price of grain by grade at Fessenden; that a similar card system, showing such prices, was in use all over the state of North Dakota; and that this is the only method of getting the Minneapolis prices, as used in the grain trade in North Dakota. He testified that the market price per bushel was higher at points nearer Minneapolis than the city of Fessenden; he said that Lemert was about twenty-three miles nearer

and that there would be a difference of one cent in the price at those two points. He then stated that the market price of durum No. 1 at Lemert on June 29, 1921, was 97 cents per bushel. We think that this evidence was both competent and sufficient to support a finding of the jury as to the market price at Lemert on the date of the alleged conversion. See Sess. Laws 1923, chap. 330.

It is contended by the appellant that the demand was insufficient; that the so-called demand was in fact nothing more than a request for a settlement. On May 27, 1921, the attorney for the plaintiff wrote the defendant company at Minneapolis, advising the latter that the plaintiff had a chattel mortgage upon the grain raised upon the premises described in the mortgage, and stating: "Under our mortgage, we are clearly entitled to the proceeds of said grain and hereby make formal demand upon you for such returns, in case settlement is not made by June 10, we will have to start suit against you for the conversion of said wheat." This letter was answered under date of the 30th by the defendant so far as material to the effect that the company desired to make further investigation into the matter. On June 27, 1921, the plaintiff's attorney again wrote the defendant, calling attention to prior correspondence and concluded as follows: "Before serving a complaint, I thought it well to give you another chance in case you wanted to effect a settlement." On June 29th following, the defendant company answered the plaintiff's letter of June 27, in which the defendant says in the first paragraph of its letter: "However, we fail to understand where the State Bank of Cathay have any just cause or reason to demand settlement *of any kind* from us in regard to this matter." (Italics are ours). Again, this letter says: "However, we believe that we are not in fault and we believe that such will be shown to be the case and we, if forced to do so, will have to defend our position in the matter." The letter concludes: "However, as we see the matter, we shall not acknowledge any settlement." We think that this correspondence clearly shows a sufficient demand, and a refusal on the part of the defendant and appellant to recognize that the plaintiff had any right under its mortgage to the grain grown on the premises described therein. It is clear that a demand would have been wholly ineffectual. The defendant expressly denied that plaintiff had any meritorious claim to the wheat. See Hahn v. Sleepy Eye Mill. Co. 21 S. D. 324, 112 N.

W. 843; and Rolette State Bank v. Minnekota Elevator Co. ante, 141, 195 N. W. 6.

It is next contended that the trial court erred in denying defendant's motion for a new trial upon the ground of newly discovered evidence. The facts on this point are as follows: One of the defenses alleged in the answer is that the mortgage covering the wheat raised upon the premises therein described was procured by fraud; that the mortgagor, Jeske, defendant in this action, did not know or understand that a crop mortgage clause was included in the chattel mortgage and was misled fraudulently into believing that no such clause was included therein. Before the case was tried, the attorney for the Grain Company, defendant and appellant, received a letter to which was signed the name of the defendant Jeske, advising, in substance, that when the mortgage was executed, he, Jeske, did not know that it contained a crop mortgage clause. At the trial, the same witness, testifying in appellant's behalf, stated that he knew that the crop mortgage clause was included in the mortgage. The defendant claims to have been surprised by this testimony and sought at the trial to impeach this witness by offering the letter in evidence. The witness Jeske denied having written the letter. Witness also denied that he ever dictated or authorized the writing of such a letter. The letter was excluded on the ground that no foundation was laid. In support of its motion for a new trial on this ground, the defendant filed an affidavit by one Brokofsky, stating, in substance, that he wrote the letter at the request of Jeske and that he read the letter to Jeske before it was mailed and that Jeske said it contained what he desired to be written therein. We do not think the trial court erred in denying the motion for a new trial upon this ground. That motion is addressed to its sound discretion and this court will not reverse unless such discretion has been manifestly abused. Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419. Jeske testified positively that he authorized no person to write such a letter and that the crop mortgage clause in the mortgage was not fraudulently inserted therein. At most, on a new trial, the testimony of the witness Brokofsky would tend to contradict and impeach the witness Jeske; inasmuch, however, as Jeske would manifestly have to be the witness of the appellant itself, it is not clear upon what principle the defendant would, on a new trial, be permitted in this manner to impeach his own witness. No sufficient showing is made to indicate that a different

verdict would probably be returned on another trial. Ibid. It seems that newly discovered evidence not likely to result in a different verdict is, as a general rule, not sufficient to warrant a new trial. Ibid.; Palmer v. Schurz, 22 S. D. 283, 117 N. W. 150. See also Howlett v. Stockyards Nat. Bank, 48 N. D. 933, 188 N. W. 173; Keck v. Kavanaugh, 45 N. D. 81, 177 N. W. 102; 29 C. J. 901. We do not think the trial court abused its discretion in denying a new trial upon this ground. In support of the same motion, one Wheeler, the agent of the defendant Grain Company at Lemert, filed an affidavit in substance to the effect that the witness Jeske had told him on the 27th day of February, 1923, that if the plaintiff lost this lawsuit, it would promptly commence foreclosure proceedings of the mortgage upon the property. Nothing in this affidavit requires that the judgment of the trial court, refusing to grant a new trial, be reversed.

When the defendant Jeske was testifying as a witness for the plaintiff, counsel for the appellant grain company asked the court to admonish the witness that answers to certain questions propounded might tend to incriminate him, presumably on the theory that such answers might show the witness guilty of selling mortgaged property. The witness himself did not claim the privilege at any time. The attorney who made the request was not acting as attorney for the witness (defendant Jeske). He so informed the court when the motion to dismiss was made. The court declined to advise the witness as requested. In this, no error was committed. This court has held that the privilege is personal and must be claimed by the witness himself and under the sanctity of an oath. State v. Kent (State v. Pancoast) 5 N. D. 516, 553–555, 35 L.R.A. 518, 67 N. W. 1052. Furthermore, the party against whom a witness is called to testify has no such interest in the matter that he may object if a witness voluntarily gives self-incriminating evidence. It is not the duty of the court, upon the interposition of such party, to inform the witness of his privilege. Com. v. Shaw, 4 Cush. 594, 50 Am. Dec. 813; State v. Mungeon, 20 S. D. 612, 108 N. W. 552.

It is contended that the evidence shows a waiver on the part of the plaintiff. It is sufficient to say that the cashier expressly contradicted the testimony which appellant contends shows a waiver. The verdict is conclusive on this point.

It is next contended that the court erred in refusing to strike from

the record Exhibit 2, the promissory note secured by the mortgage, upon the ground that the note had been renewed but was not marked upon its face "renewed," as required by chapter 91, Session Laws of 1921. That statute reads as follows:

"Sec. 1.   That it shall be illegal, hereafter, for any person, or corporation, state or national bank, doing business in the State of North Dakota, to take from any debtor or other person obligated upon a promissory note, any renewal note therefor without returning the promissory note renewed, unless there be written or printed across the renewed note the words 'Renewed note.'

"Sec. 2.   Any promissory note given in renewal of a previous promissory note shall be of no force or effect unless given in conformity with section 1 hereof.

"Sec. 3.   All acts and provisions of law conflicting with this enactment are repealed.

"Sec. 4.   (Emergency).   Whereas, there are many banks, corporations and persons who and which have taken promissory notes for renewal purposes, and which notes have fallen into the hands of innocent persons and become collectible twice, an emergency exists and this Act shall take effect and be in full force and effect from and after its passage and approval."

Subdivision 2 of the statute provides that the *renewal* note shall be of no force or effect, but does not provide that the original note shall be rendered inoperative by failure to mark it "renewed."   The undoubted purpose of the legislature was to protect the makers of promissory notes who give renewals thereof without requiring a return of the original evidence of the indebtedness, against multiple liability on the same indebtedness, by reason of the failure of the payee or holder to deliver the original note to the person renewing the same.   There is nothing in the statute that rendered Exhibit 2 incompetent for the purpose for which it was offered under the facts in this case.

We have considered every assignment discussed in the brief of counsel for the appellant, and, finding no error in the record, the judgment of the trial court is affirmed.

BRONSON, Ch. J., and CHRISTIANSON, BIRDZELL, and NUESSLE, JJ., concur.